## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL J. M.,        )
                                  )
             Plaintiff,     )    Case No. 1:22-cv-3946
v.                          )
                                  )    Magistrate Judge Jeannice W. Appenteng
MICHELLE KING, Acting    )
Commissioner of Social Security,[1]  )
                                  )
            Defendant.   )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Michael J. M. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should reversed and the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## <u>BACKGROUND</u>

Plaintiff protectively applied for DIB on January 9, 2015 alleging disability since September 18, 2012 due to Crohn's disease, bulging discs in the neck, arthritis, severe tennis elbow, numbing of the hands and toes, chronic back issues,

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

and issues with the right shoulder after surgery. Administrative Record ("R.") 176-77, 220. Born in February 1971, plaintiff was 41 years old as of the alleged onset date, and 48 years old as of his December 31, 2019 date last insured ("DLI"), making him at all times a younger person (under age 50). 20 C.F.R. § 404.1563(c). He graduated from high school and spent more than 20 years as a construction worker. R. 221, 222. Plaintiff engaged in additional substantial gainful activity after the alleged disability onset date and through December 2014. As a result, the relevant period of review is from January 1, 2015 through December 31, 2019. R. 572-73.

The Social Security Administration denied plaintiff's application at all levels of review and he filed a timely appeal with the district court. R. 694-704. On January 23, 2020, the court remanded the case for further proceedings, with instructions to re-evaluate plaintiff's subjective symptoms, reassess his residual functional capacity ("RFC"), restate the reasons for the weight assigned to medical opinions, and obtain vocational expert ("VE") testimony about available jobs. R. 706-30. *See also Michael M. v. Saul*, No. 18 C 6718, 2020 WL 374682 (N.D. Ill. Jan. 23, 2020). On February 15, 2020, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an administrative law judge (the "ALJ") with instructions to comply with the court's order. R. 733. Following a second hearing, a new ALJ once again denied plaintiff's claim for benefits. R. 735-55. The Appeals Council remanded the case on July 30, 2020, instructing the ALJ to, among other things, obtain medical expert ("ME") testimony concerning plaintiff's Crohn's

disease, give further consideration to the opinions of record, and evaluate plaintiff's subjective statements about his symptoms. R. 758-60.

The ALJ held a third hearing on November 10, 2021 and heard testimony from plaintiff, who was represented by counsel, from ME Gilberto Munoz, M.D., and from VE Pamela Nelligan.[2] R. 592-629. On November 23, 2021, the ALJ determined that plaintiff's Crohn's disease, cervical degenerative disc disease, right biceps tenodesis, and carpal tunnel syndrome are all severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 573-74.

After reviewing the evidence, the ALJ concluded that prior to the December 31, 2019 DLI, plaintiff had the RFC to perform light work with various postural, manipulative, and environmental limitations. He would also be off-task less than 10% of the workday due to unscheduled breaks. R. 574-82. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past work but could perform a significant number of other jobs available in the national economy. R. 583-84. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the December 31, 2019 DLI. R. 584. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes*

---

[2] This third hearing was held telephonically due to the COVID-19 pandemic.

*v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) erred in finding that he would be off-task less than 10% of the workday due to his Crohn's disease; (2) failed to properly assess the opinions of record; and (3) erred in evaluating his subjective statements regarding his symptoms.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.    Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## B. Analysis

### 1. Time Off-Task

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that he would not be off-task for more than 10% of the workday due

to unscheduled bathroom breaks, resulting in a flawed RFC determination. Dkt. 18 at 9-12; Dkt. 24 at 2-5.[4] A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

Plaintiff first objects that the ALJ effectively imposed no limitations at all to account for his Crohn's disease even though she found it to be a severe impairment. As plaintiff explains, since the VE testified that workers are typically allowed to be off-task for 10 to 15% of the time during a regular workday, a determination that he would be off-task less than 10% of the time simply means he requires "normal" breaks. Dkt. 18 at 9-10; Dkt. 24 at 2. Plaintiff says this non-limitation is inconsistent with the ALJ's finding that his Crohn's disease "more than minimally affects [his] ability to perform basic work-related tasks." *Id.* (citing 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1522(a); *Warren v. Colvin*, No. 12 C 3298, 2013 WL 1196603, at *5 (N.D. Ill. Mar. 22, 2013) (questioning in dicta how ALJ concluded that a person with moderate limitations in concentration, persistence, or pace could focus for two hours at a time, resulting in the "same frequency of breaks as a typical worker"). The Court disagrees.

---

[4] This opinion cites to the CM/ECF number at the top of the page.

To begin, the ALJ "was not <u>required</u> to include any particular limitations (e.g., extra bathroom breaks) just because he found plaintiff's Crohn's disease to be a severe impairment." *Sampson v. Kijakazi*, No. 21 C 318, 2022 WL 1135037, at *7 (E.D. Wis. Apr. 18, 2022) (underlining in original). Moreover, the ALJ found that plaintiff would be off-task specifically for unscheduled bathroom breaks, which relates directly to his Crohn's disease. R. 574, 579-80. The mere fact that the amount of extra time plaintiff needs to use the bathroom falls within the tolerance permitted by most employers does not mean the ALJ made no accommodation for the Crohn's impairment.

Plaintiff argues that the ALJ still erred by failing to explain the basis for the restriction to less than 10% of time off-task. Dkt. 18 at 10-11; Dkt. 24 at 3-5. Plaintiff notes that ME Munoz and state agency reviewer James L. Greco, M.D., did not include any off-task time in their RFC assessments. R. 82-84, 611-12. And the ALJ rejected both the April 4, 2017 opinion from treating gastroenterologist Benjamin Schmid, M.D. that plaintiff would be off-task 20% of the time, R. 559, 580, and plaintiff's testimony that he has at least six to seven bowel movements per day and sometimes more. R. 579. Plaintiff says that this resulted in an "evidentiary deficit" that the ALJ filled with a limitation he plucked "out of thin air." Dkt. 18 at 11-12; Dkt. 24 at 2. Plaintiff is mistaken.

The ALJ discussed the evidence concerning plaintiff's bowel movements and bathroom usage in great detail. R. 575-80. In May 2015, plaintiff reported four to five bowel movements per day but also acknowledged that he had stopped taking

medication for two years due to insurance issues. R. 510, 579. By September and November 2015, plaintiff's bowel movements had decreased to two per day. R. 498, 502, 579. On June 13, 2016, plaintiff reported two to three bowel movements per day, and in August 2016 the number was one per day. R. 487, 490, 579. Plaintiff once again reported two bowel movements per day in March 2017, R. 481, 579, after which he did not receive further treatment until May 2018. Though he reported four to five bowel movements per day at that time, he did not request or receive any medication change. R. 579, 1194, 1198. In September 2018 plaintiff was still having four liquid stools per day, sometimes more, but he started taking Stelara, and by October 2019 he was feeling somewhat better. R. 578, 1065, 1068, 1081.

Based on this record, the ALJ reasonably determined that prior to the December 31, 2019 DLI, plaintiff could have from two to four bowel movements per day, which would be the cause of any off-task time. R. 579. The ALJ also accepted plaintiff's testimony that each bowel movement lasted on average ten minutes, R. 608, and so concluded that he would not be off-task more than 10% of a workday. R. 579-80. *Compare Sikorski v. Berryhill*, 690 F. Appx. 429, 433 (7th Cir. 2017) (ALJ erred by failing to state the length of the plaintiff's bathroom breaks). Notably, the VE testified that even if plaintiff would be off-task for 15% of the workday using the bathroom, this still would not preclude full-time employment. R. 620 (bathroom breaks would become an issue "where it was on an everyday regular basis and exceeded 15% of the workday"). Plaintiff disagrees with this assessment but the ALJ provided a logical bridge between the evidence and her conclusion, and that

decision is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (substantial evidence is "not a high threshold").

Viewing the record as a whole, the ALJ did not commit reversible error in assessing the amount of time plaintiff would be off-task for bathroom breaks prior to the DLI. Plaintiff's request to remand the case for further consideration of this issue is denied.

### 2.    Opinion Evidence

Plaintiff next argues that the ALJ erred in rejecting Dr. Schmid's treating opinion regarding plaintiff's functional limitations. Dkt. 18 at 12-20; Dkt. 24 at 5-13. For cases such as this that were filed before March 27, 2017, a treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what

9

weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

On April 4, 2017, Dr. Schmid completed a questionnaire opining that plaintiff's Crohn's disease causes abdominal pain, diarrhea, joint pain, and "all over body aches." R. 557. Though plaintiff has received "maximum medical treatment," he has experienced only partial improvement in his symptoms without ever achieving remission. *Id*. According to Dr. Schmid, plaintiff would miss "many days of work each month," could not sit still for more than 30 minutes at a time in an 8-hour workday, could not concentrate for more than 80% of an 8-hour workday due to recurrent pain and diarrhea, and "would not be able to sustain job activity for an adequate time." R. 557-59.

In declining to give significant weight to Dr. Schmid's opinion, the ALJ acknowledged that he is a gastroenterology specialist who treated plaintiff for many years. 20 C.F.R. § 404.1527(c)(2), (5). The ALJ also noted, however, that Dr. Schmid's conclusions appeared to be based on plaintiff's subjective allegations as opposed to objective clinical findings. R. 576-78, 581. As the ALJ explained, Dr. Schmid simply recounted plaintiff's "subjective complaints of pain (abdominal, back,

leg, and joint) and his reports of frequency of diarrhea" without pointing to any record support. R. 581. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is . . . based solely on the patient's subjective complaints, the ALJ may discount it").

Plaintiff argues that his complaints find objective support in numerous medical records. Dkt. 18 at 13-14; Dkt. 24 at 5-6. He cites six treatment notes from Dr. Schmid showing: tenderness and "mass effect" in the right lower quadrant on July 9, 2015, R. 507; tenderness and mass in the right lower quadrant on September 15, 2015, R. 502; abdominal tenderness on November 9, 2015 and June 13, 2016, R. 491, 499; "tender mid epigastric" on August 22, 2016, R. 488; and tenderness and fullness in the right lower quadrant on March 6, 2017. R. 482. Plaintiff also notes that testing from April 2007 and 2010 showed thickening of the right colon and duodenum, duodenal erosion, small bowel inflammation, and ileal stricture. R. 508. Plaintiff further points to treatment notes from his subsequent gastroenterologist, Samir Patel, M.D., documenting mild abdominal fullness, tenderness, and pain on September 28, 2018, March 8, 2019, and October 25, 2019. R. 1070, 1074, 1083. And he emphasizes various stool tests showing active Crohn's disease or colitis. R. 539, 541, 1083, 1283. Plaintiff believes that the ALJ's failure to properly consider this evidence led to a flawed analysis of Dr. Schmid's opinion. Dkt. 18 at 13-14.

This argument is unpersuasive for two reasons. First, the ALJ expressly discussed records showing plaintiff's active Crohn's disease and abdominal pain,

tenderness, and fullness. R. 577-78. *See Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (affirming where ALJ "did not ignore an entire line of evidence that supported a finding of disability"). Second, plaintiff fails to explain how any of the cited records demonstrate that, prior to his DLI, he could barely sit, stand, or concentrate as Dr. Schmid suggested. There is no documentation in Dr. Schmid's notes of disabling back, leg, or joint pain, and plaintiff testified that these were not significant concerns after 2014. R. 581. Yet Dr. Schmid repeatedly identified such pain as a basis for finding plaintiff incapable of working. R. 557-59. It is well-established that an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes." *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021).

In addition to the lack of objective support for Dr. Schmid's opinion, the ALJ also expressed concern that it was not based on the full longitudinal record. R. 581. There was a four-year period between 2011 and 2015 when Dr. Schmid was not treating plaintiff and plaintiff had earnings that rose to the level of substantial gainful activity, yet Dr. Schmid failed to mention this and made no effort to restrict his opinion to any particular time period. *Id.* Plaintiff cites *Scivally v. Sullivan*, 966 F.2d 1070 (7th Cir. 1992), for the proposition that such specificity was not required because the questionnaire Dr. Schmid completed did not ask him to indicate whether his opinions "applied to a particular period of time, or inversely, if they did not apply to a period of time." Dkt. 18 at 15; Dkt. 24 at 7-8. But *Scivally* merely held that an ALJ erred in finding a physician's two opinions "totally in contradiction

12

with each other" where "the different formats of the reports account for the alleged inconsistencies." *Scivally*, 966 F.2d at 1076-77. Here, Dr. Schmid's one opinion ignored four years of plaintiff's treatment and work history, which reasonably cast doubt on its reliability. R. 581.

Also unavailing is plaintiff's assertion that Dr. Schmid effectively considered his entire work history by noting that he was employed as a laborer from 2007 to 2011 and had to miss many days of work each month due to Crohn's and joint pain. Dkt. 18 at 15; Dkt. 24 at 8. To begin, Dr. Schmid cited no evidence to support the claim regarding plaintiff's absences, and plaintiff does not identify any records documenting complaints of significant work problems. Moreover, the fact that Dr. Schmid mentioned plaintiff's work from 2007 to 2011 (without any prompting from the questionnaire), but said nothing about his work from 2011 to 2015 bolsters the ALJ's concern that Dr. Schmid's opinion was not based on a fair representation of the entire objective record and overstated plaintiff's functional limitations.

Plaintiff makes much of his own testimony that he worked with friends who let him "hide and go relax or sleep, due to pain," arguing that the ALJ was required to consider such accommodations in weighing Dr. Schmid's opinion. Dkt. 18 at 16; Dkt. 24 at 8-9. That argument may have merit if Dr. Schmid was aware of the accommodations and cited them as a reason for ignoring a four-year period when plaintiff was working. He did not. And contrary to plaintiff's assertion, the ALJ discounted Dr. Schmid's opinion not because plaintiff had engaged in substantial gainful activity, but because the opinion appeared to be based on plaintiff's

13

subjective statements rather than a longitudinal consideration of his treatment and work history. R. 581; Dkt. 24 at 9-10.

Plaintiff next takes issue with the ALJ's observation that Dr. Schmid failed to acknowledge periods of time when there was improvement in plaintiff's bowel movements. Plaintiff concedes that there have been fluctuations in the frequency of his bowel movements but stresses Dr. Schmid's assertion that he never went into remission. Dkt. 18 at 16-17; Dkt. 24 at 10-11. Yet the ALJ did not discount Dr. Schmid's opinion on the grounds that plaintiff had achieved remission. Nor did the ALJ suggest that plaintiff was ever symptom free. As noted, the ALJ simply stated that Dr. Schmid's opinion that plaintiff could barely sit, stand, walk, or concentrate was not consistent with the overall record evidence. R. 581.

The Court likewise does not find reversible error in the ALJ's single statement that Dr. Schmid's opinion was inconsistent with plaintiff's "course of treatment." R. 581. Plaintiff construes this phrase to mean that the ALJ expected him to have undergone additional, unidentified treatment modalities. Dkt. 18 at 14-15; Dkt. 24 at 6-7 (citing *Voigt v. Colvin*, 781 F.3d 871, 877 (7th Cir. 2015)) (ALJ erred in citing lack of steroid injections as a basis for discounting plaintiff's complaints of pain without evidence such injections would have been appropriate). From context, however, it is evident that the ALJ concluded only that the severe limitations Dr. Schmid identified conflicted with evidence that plaintiff experienced periods of improvement and reduced bathroom frequency with medication. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (a reviewing court should

read an ALJ's decision holistically); *Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr*, 989 F.3d at 512) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record").

Plaintiff finally argues that the ALJ erred in affording great weight to the opinion from ME Munoz. Dkt. 18 at 17-18; Dkt. 24 at 11-12. Dr. Munoz opined that prior to the DLI, plaintiff could perform light work with certain postural and environmental limitations. R. 611-12. Plaintiff does not challenge these findings and any such argument has been waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020) (arguments not raised before the district court are waived). Instead, plaintiff focuses on Dr. Munoz's testimony concerning bathroom usage. Dr. Munoz testified on cross-examination that he could not estimate the frequency of plaintiff's bathroom breaks due to the lack of a "good longitudinal record." R. 613. In declining to include any extra breaks in the RFC, he noted that a person who experiences diarrhea as frequently as plaintiff claimed would usually present with significant weight changes, yet plaintiff's weight was "pretty much stable." *Id*. Dr. Munoz also observed that plaintiff did not consistently report significant bathroom use at his medical appointments. R. 616.

Plaintiff says that Dr. Munoz ultimately walked back both of these statements: he conceded that a person could have consistent diarrhea and not necessarily experience weight loss, R. 615, and he agreed that a patient with known symptoms may not report them at every doctor's appointment. R. 616. In plaintiff's

15

view, these concessions undermine Dr. Munoz's testimony about bathroom usage so the ALJ should have given more weight to Dr. Schmid's opinion. Dkt. 18 at 17-20; Dkt. 24 at 11-13. This argument is curious because Dr. Schmid did not opine that plaintiff would need a specific number of bathroom breaks per day. He stated only that plaintiff would not be able to maintain attention for more than 80% of an 8-hour workday due to a combination of "abdominal pain, diarrhea, back and leg pain, and joint pain." R. 559. For reasons stated, the ALJ did not err in discounting this opinion due to its inconsistency with other record evidence. Moreover, the ALJ ultimately rejected the opinions from both Dr. Schmid and Dr. Munoz and found that plaintiff could need up to four unscheduled bathroom breaks per day lasting up to 10 minutes. The ALJ also concluded that the breaks would take plaintiff off-task less than the 15% threshold set forth by the VE. R. 579-80, 620. This decision was not patently erroneous. *Rodolfo G. v. Kijakazi*, No. 19 C 3937, 2022 WL 507589, at *7 (N.D. Ill. Feb. 18, 2022) (quoting *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015)) ("courts will uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment'").

This Court will not reweigh evidence or substitute its judgment for the ALJ's determination. *Warnell*, 97 F.4th at 1052-53. Viewing the record as a whole, the ALJ provided good reasons for discounting Dr. Schmid's opinion and that decision is supported by substantial evidence.

### 3. Plaintiff's Subjective Statements

Plaintiff's last argument in support of remand is that the ALJ improperly discounted his subjective statements regarding the limiting effects of his Crohn's disease. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

17

In rejecting plaintiff's statements regarding his symptoms, the ALJ found them inconsistent with his reports to physicians. For example, plaintiff stated that medication did not help with his diarrhea, he never had less than six or seven bowel movements per day, and he sometimes used the bathroom up to 20 times a day. But as the ALJ fairly observed, plaintiff frequently told his doctors that he was having between one and three bowel movements per day, with the decrease corresponding with medication and diet changes. R. 579. The ALJ also noted that the objective evidence of mild abdominal discomfort and fullness was inconsistent with plaintiff's complaints of debilitating pain. R. 579-80. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration").

Plaintiff recites a litany of purported errors he believes necessitate remand. He argues that his use of strong medications supports his credibility, and the ALJ did not identify other treatment measures he should have tried. Dkt. 18 at 20, 23; Dkt. 24 at 13-15 (citing *Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016)) ("evidence of prescriptions for strong pain medications, epidural injections, multiple surgeries, and physical therapy" supported complaints of disabling pain). But the ALJ acknowledged plaintiff's use of Norco for 20 years (including many years when he was still working) and morphine for a year and a half (meaning after the December 31, 2019 DLI), and reasonably concluded that this was insufficient to support plaintiff's claims of work-preclusive pain prior to the DLI. R. 579. Plaintiff

also endorses fluctuating symptoms, denies that he improved with treatment and diet changes as the ALJ suggested, and says his symptoms never disappeared. Dkt. 18 at 21-22; Dkt. 24 at 15-16. As noted, however, the ALJ discussed these fluctuations and was not patently wrong in finding plaintiff's reports of seven to twenty bowel movements per day inconsistent with the record. *See supra* at 7-9.

Plaintiff finally objects that the ALJ did not consider his limited activities of daily living or all of the regulatory factors. Dkt. 18 at 23-24; Dkt. 24 at 15-16. In fact, the ALJ recited plaintiff's reported activities and limitations based on his testimony from both the November 2020 and November 2021 hearings. R. 575. And even if the ALJ's credibility assessment was not perfect, it did not need to be. *Romona R. B. v. O'Malley*, No. 23 C 50183, 2024 WL 4226277, at *5 (N.D. Ill. Sept. 18, 2024) (quoting *Halsell v. Astrue*, 357 F. Appx. 717, 722 (7th Cir. 2009)) ("Not all of the ALJ's reasons must be valid in a subjective symptom analysis, 'as long as enough of them are'"). Here, the ALJ's evaluation of plaintiff's subjective symptoms was adequately supported with evidence and explanation. It thus was not patently wrong and plaintiff's request to remand the case for further consideration of this issue is denied.

## **CONCLUSION**

For the reasons stated above, plaintiff's request to remand the case is denied, and the Commissioner's motion for summary judgment [22] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____

**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 2/10/2025